Filed 7/2/26  P. v. Popoca CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D087444 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF2200481) |
| SIMEON HERNANDEZ POPOCA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Frederick Paul Dickerson III, Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Simeon Hernandez Popoca (Hernandez) was convicted by a jury of nine felonies stemming from his sexual encounters with three girls no older than 14 years old, including one count of forcible rape. The evidence included testimony from the victims, relatives to whom the victims reported Hernandez's conduct before disclosing it to the police, and an expert on child sexual abuse accommodation syndrome (CSAAS or the syndrome). Hernandez claims there was insufficient evidence that he used force as required to convict him of rape, the jury was misinstructed how to use the relatives' testimony, and the CSAAS evidence was inadmissible. Disagreeing in all respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2024, a Riverside County jury convicted Hernandez of multiple offenses stemming from his sexual encounters more than 20 years earlier with three girls, none of whom was older than 14: one count of forcible rape of Jane Doe A.C. (Jane) that occurred between August 1989 and August 1990 (Pen. Code, § 261, former subd. (a)(2); see Stats. 1985, ch. 283, § 1, p. 4592), seven counts of committing lewd acts on another minor under the age of 14 from September 1987 to September 1995 (*id.*, § 288, subd. (a)), and one count of committing a lewd act on a third minor under the age 14 between May 2001 and May 2002 (*ibid.*). The court imposed a 24-year sentence consisting of an eight-year upper term for the rape conviction and consecutive two-year sentences (each one-third of the midterm) for the remaining eight lewd act convictions.

2

# DISCUSSION

## A.   *Sufficiency of the Evidence*

### 1.   *Additional Background*

In a criminal information filed in July 2023, the People alleged that Hernandez, then 19 years old, forcibly raped Jane when she was around 11 years old.  As Jane described the incident, Hernandez "came into the house. I was sitting on the couch.  And he came over, and he just started touching me, trying to undress me."  He "unzipped [her] pants and rolled them down" and opened her button-up shirt.  At some point, Jane went from sitting on the couch to lying on her back with Hernandez on top of her.  Hernandez penetrated Jane's vagina with his penis, which caused her to "fe[el] some pain," "jump[]," and "yelp[]."  Jane, who said that she "didn't know what was happening," looked away from Hernandez during this encounter because she "didn't want to see."

Hernandez did not use his arms or hands to pin Jane down.  When asked whether she struggled or fought back, Jane said that she "wasn't doing anything" and just "stayed there … limp."  She could not remember whether they said anything to each other during this incident.

Sometime after Jane turned 15 years old, she told her parents about this and other incidents involving Hernandez.[1]  In front of Jane and her mother, Jane's father confronted Hernandez about "touching" his daughter. According to Jane, Hernandez initially denied doing so but ultimately "shrugged in shame" and said, " 'Yes I did do it.  But I'm sorry.' "  As Jane's

---

[1]    Jane testified that Hernandez occasionally touched her under her clothes from the time she was eight or nine years old until she was 12, but the charged incident was the only one that involved intercourse.

mother characterized it, Hernandez admitted to "raping" her daughter but did not apologize. Janes's father testified Hernandez denied that he had touched Jane but nonetheless apologized, although he told one detective during the investigation that Hernandez admitted to sexually assaulting Jane.

For his part, Hernandez testified that he lived at Jane's house for a few weeks in 1986 and 1987 and occasionally visited it thereafter. But he denied ever touching Jane inappropriately or making the admissions or apologies her parents described.

2.    *Hernandez's Use of Force*

To convict Hernandez of the charge of raping Jane, the People had to prove beyond a reasonable doubt that he had sexual intercourse with her against her will through "force, violence, or fear of immediate and unlawful bodily injury on the person or another." (Pen. Code, § 261, former subd. (2); CALJIC No. 10.00.) According to Hernandez, Jane's testimony failed to show that he used any of these means to have sex with her. The People counter that there was sufficient evidence that he used force to overcome Jane's will.

When resolving a challenge to the sufficiency of the evidence, "we do not determine the facts ourselves" nor do we "reweigh evidence or reevaluate a witness's credibility." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) "Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*Ibid.*) "We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Ibid.*) " '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed

4

simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*Ibid.*)

" 'Force' " as used in the rape statute means that " 'the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' " (*People v. Griffin* (2004) 33 Cal.4th 1015, 1023–1024.)  Accordingly, "in a forcible rape prosecution the jury determines whether the use of force served to overcome the will of the victim to thwart or resist the attack, *not* whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resisting her attacker." (*Id.* at p. 1027.)  This means that "even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction." (*Ibid.*)

We agree with the People that the evidence viewed in the light most favorable to the judgment supported a finding that Hernandez used force. Jane testified that she went from sitting to lying on her back while Hernandez touched and undressed her, looked away from him and went limp when he was on top of her, and was startled when he penetrated her vagina because she did not know what was happening.  These facts supported an inference that the encounter was against Jane's will.  She also testified to facts showing that " 'some force was used by defendant in the penetration and physical movement involved and, at least in the beginning, it was painful for her,' " evidence that "supported a finding that a rape had been against the victim's will." (*In re Jose P.* (2005) 131 CalApp.4th 110, 117.)  The finding is also supported by testimony that Hernandez admitted and apologized to Jane's parents for the abuse.

5

## B. *CSAAS Evidence*

### 1. *Additional Background*

The People moved in limine to admit expert testimony of psychologist Dr. Jody Ward about CSAAS in their case-in-chief. CSAAS was developed in 1983 in an attempt to explain the seemingly counterintuitive behaviors exhibited by child victims of ongoing sexual abuse.[2] California courts have admitted evidence about the syndrome "for the limited purpose of disabusing the fact finder of common misconceptions it might have about how child victims react to sexual abuse" (*In re S.C.* (2006) 138 Cal.App.4th 396, 418), such as a delay in reporting (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744–1745 (*Patino*)) or certain other "seemingly self-impeaching behavior" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1301 (*McAlpin*)).

Dr. Ward's testimony was admissible, the People argued, because the victims delayed disclosing Hernandez's sexual abuse to law enforcement and, by the time the court heard their motion, evidence had been elicited of other conduct consistent with the syndrome. Ward, who did not know any of the facts of the case, was expected to testify about the CSAAS behaviors corresponding to this conduct. Hernandez contended that expert testimony was not needed because the same misconceptions about the behavior of child sex abuse victims that existed when the syndrome was identified had not

---

[2]    These behaviors—also called " 'myths' " or "misconceptions" (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*))—are: (1) secrecy, (2) helplessness, (3) "entrapment and accommodation," (4) delayed "unconvincing" disclosure, and (5) retraction or recantation.

been shown to persist today. He also asserted that CSAAS evidence does not satisfy the *Kelly*[3] test for admissibility.

The court granted the People's motion and allowed Dr. Ward to testify about four of the five CSAAS myths. In addition to discussing those myths, Ward cautioned that "we can't take these behaviors and try to diagnose whether or not sexual abuse occurred because many of these behaviors are seen in other dysfunctional family situations." And consistent with this limitation, Ward did not offer any opinion as to Hernandez's guilt.

After Dr. Ward was excused, the court read CALCRIM No. 1193 to the jurors to limit their use of her testimony. They were instructed that CSAAS evidence is "only offered to explain certain behavior of an alleged victim of child sexual abuse" for the purpose of evaluating the believability of Hernandez's victims. They were also warned that Ward's testimony was "not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged." (CALCRIM No. 1193.) Although this instruction was not repeated after the close of evidence, the judge reminded jurors then that "certain evidence was admitted for a limited purpose." (CALCRIM No. 303.) The prosecutor referred to these instructions during her closing argument before telling the jury, "Dr. Ward can't come in and tell you, 'Yes, these women are telling the truth.' "

---

3    See *People v. Kelly* (1976) 17 Cal.3d 24. Once known as the "*Kelly/Frye* test" (see *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013), it is now "the *Kelly* rule in California after changes to the Federal Rules of Evidence that superseded *Frye*." (*People v. Nieves* (2021) 11 Cal.5th 404, 442, fn. 8.) Under the *Kelly* test, "when expert testimony based on a new scientific technique is offered, the proponent of the testimony must first establish the reliability of the method and the qualifications of the witness." (*People v. Harlan* (1990) 222 Cal.App.3d 439, 448 (*Harlan*).)

2. *Dr. Ward's Testimony Was Appropriately Admitted*

Hernandez's main argument as to Dr. Ward's testimony is that CSAAS evidence, as a rule, should be deemed inadmissible in California. He offers three justifications: (1) CSAAS does not satisfy the *Kelly* test, (2) the syndrome's misconceptions are now within jurors' common knowledge and thus an expert is not needed to explain them, and (3) expert testimony about the syndrome will be always be misused by the jury "as evidence that the victim's allegations must be true." Hernandez contends he was prejudiced by the erroneous admission of this evidence because it improperly bolstered the victims' credibility. The People retort that the law is settled in California that CSAAS evidence is admissible without the need to satisfy the *Kelly* test, but in any event there is no reason to believe that the jury disregarded the court's, Ward's, and the prosecutor's admonishments not to misuse it.

Thirty-five years ago, our Supreme Court determined that CSAAS evidence " 'is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' " (*McAlpin, supra*, 53 Cal.3d at p. 1301.) Although it "is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*Id*. at p. 1300.) The high court supported this conclusion by citing with approval *Harlan, supra*, 222 Cal.App.3d at pages 449–450, where the Court of Appeal stated that "[t]he *Kelly/Frye* rule does not apply to this type of evidence." (*Harlan*, at p. 449; see also *McAlpin*, at p. 1301 & fn. 4.)

8

Since then, CSAAS evidence "has been ruled to be properly admitted by the courts of this state," as they "have long recognized the well-established relevance, necessity, reliability, and importance of this evidence." (*People v. Munch* (2020) 52 Cal.App.5th 464, 472 (*Munch*).) And for just as long, it has been the law in California that CSAAS evidence need not satisfy the *Kelly* rule. (*People v. Stoll* (1989) 49 Cal.3d 1136, 1161; *Lapenias*, *supra*, 67 Cal.App.5th at p. 173.) Although, as Hernandez points out, a few other states have rejected CSAAS testimony, the fact "[t]hat other jurisdictions may disagree with [*McAlpin*] does not change [its] impact on California cases."[4] (*Munch*, at p. 468.) Binding precedent, therefore, requires us to reject Hernandez's argument that CSAAS testimony is per se inadmissible.

So, too, do other settled principles. We think it is safe to continue to assume that "[m]ost jurors, fortunately, have been spared the experience of being the parent of a sexually molested child." (*McAlpin*, *supra*, 53 Cal.App.3d at p. 1302; accord *Munch*, *supra*, 52 Cal.App.5th at p. 469 [" ' "[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse" ' "].) CSAAS evidence, therefore, is a proper subject for expert testimony even if, as Hernandez surmises, some of the myths it addresses may be known by potential jurors. (*McAlpin*, at p. 1300 ["even if the jury has some knowledge of the matter, expert opinion may be admitted if it would 'assist' the jury" in "at least some degree"]; accord Evid. Code, § 801, subd. (a).) And we are unpersuaded by his suggestion that jurors always misuse CSAAS evidence as proof the sexual abuse occurred, considering that we presume they will follow the

---

[4]     As of 2020, California was among the 41 states allowing CSAAS testimony for at least some purpose. (*Munch*, *supra*, 52 Cal.App.5th at p. 472.)

corresponding limiting instruction defendants may request. (*People v. Waidla* (2000) 22 Cal.4th 690, 725 [jurors presumed to follow limiting instructions]; *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1073–1074 [no sua sponte duty to read CALCRIM No. 1193].)

Against this backdrop, we find no abuse of the court's "broad discretion" to admit Dr. Ward's testimony. (*People v. McDowell* (2012) 54 Cal.4th 395, 426 [standard of review].) As required, the People identified the CSAAS misconceptions Ward would generally address (*People v. Bowker* (1988) 203 Cal.App.3d 385, 394) based on evidence that had been elicited about the victims' "paradoxical behavior" (*Patino, supra*, 26 Cal.App.4th at pp. 1744–1745). Finding nothing arbitrary, capricious, or patently absurd about allowing Ward's testimony under these circumstances, there was no error we must examine for prejudice.

## C.   *Prior Disclosure Jury Instruction*

Under the modern interpretation of what has historically been known as the " 'fresh complaint' " doctrine—but which is more aptly characterized as the " 'prior disclosure' " doctrine (*People v. Flores* (2024) 101 Cal.App.5th 438, 443 (*Flores*))—"proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admitted for a limited nonhearsay purpose" (*People v. Brown* (1994) 8 Cal.4th 746, 749–750 (*Brown*)). Thus, the court may admit evidence of the victim's out-of-court statement "to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*Id.* at p. 750.)

10

In a ruling unchallenged on appeal, the court admitted testimony by the victims' relatives about prior disclosures by the victims regarding Hernandez's sexual abuse. Either before or after each relative testified, the court read this limiting instruction that the prosecutor drafted and Hernandez approved:[5]

> "During the trial, certain evidence will be admitted for a limited purpose. You may consider that evidence only for that purpose and for no other.

> "For example, witnesses [names omitted] may testify about disclosures [victim] made to her regarding the alleged sexual conduct prior to the trial and prior to a report to law enforcement. You may consider that evidence in two ways: as corroboration to [victim]'s statements, and to establish the fact of, and the circumstances surrounding, [victims]'s disclosure to others at the time it was made. *It is up to you what weight to give the disclosure and its relevancy to your determination as to whether the offenses occurred.*" (Italics added.)

Hernandez now asserts that the italicized portion of the instruction misstated the law in that it invited jurors to use the evidence to directly prove the crimes occurred. Because these disclosures could not be used for this purpose, he argues that it was wrong for the court to suggest they had any relevance to that question.

The jury may consider the evidence of an extrajudicial disclosure and its surrounding circumstances not directly to prove the truth of the matter asserted, but indirectly " 'for the purpose of corroborating the victim's

---

[5] The parties agree that review is appropriate in the absence of an objection because Hernandez contends that the court misstated the law. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) All the instructions were substantially the same.

testimony.' " (*People v. Manning* (2008) 165 Cal.App.4th 870, 880.)  For example, evidence of prior disclosures "along with CSAAS testimony" may "help[] 'shed light upon the reasons' for [a victim's] delayed disclosure and 'tend[] to forestall any erroneous inferences that might [arise] in the absence of that evidence,' " such as that the accusations were fabricated.  (*Flores*, *supra*, 101 Cal.App.5th at p. 451.)  Ultimately, of course, even this indirect testimony regarding a victim's prior disclosure may only be admitted when it is "*relevant to the trier of fact's determination as to whether the offense occurred.*"  (*Brown*, *supra*, 8 Cal.4th at p. 750, italics added.)

Although perhaps not a model of clarity, the instruction was a correct statement of the law.  When read as a whole and in context, it simply told the jurors to give this potentially corroborative testimony—which under *Brown was* relevant to whether the offenses occurred—the weight they saw fit when deciding Hernandez's guilt.  To the extent Hernandez believes that the instruction was unclear or could have been misconstrued, his failure to request clarification forfeits the issue.  (*People v. Lee* (2011) 51 Cal.4th 620, 638.)  Because our de novo review reveals no instructional error, we need not address Hernandez's claims of prejudice.  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 [standard of review].)

## DISPOSITION

The judgment is affirmed.

DATO, Acting P. J.

WE CONCUR:

BUCHANAN, J.

CASTILLO, J.

12